UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ECLIPSE AEROSPACE, INC., | ) |
| Plaintiff, | ) Case No. 15 C 1820 |
| v. | ) Magistrate Judge Sidney Schenkier |
| STAR 7, LLC, CULBERTSON CONTRACTORS, LLC, JAY CULBERTSON, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Eclipse Aerospace, Inc. ("Eclipse") has sued defendants Star 7, LLC, Culbertson Contractors, LLC, and Jay Culbertson for breach of contract and tortious interference with prospective economic advantage under Illinois state law (doc. # 5: Am. Compl.). Eclipse brought suit in federal court based on diversity jurisdiction, 28 U.S.C. § 1332(a)(2) (*Id.* ¶ 7). Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2), on the ground that they are not subject to the personal jurisdiction of this Court (doc. # 19). We allowed an extended period for discovery on the motion, which is now fully briefed (doc. # 40: Pl.'s Resp.; doc. # 42: Defs.' Reply). For the reasons described below, we grant defendants' motion to dismiss.

I.

A party asserting personal jurisdiction need only make out a *prima facie* case. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). However, once a defendant has moved for a dismissal based on the lack of personal jurisdiction, "the plaintiff bears the

---

[1] On May 8, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (docs. ## 9, 14).

burden of demonstrating the existence of jurisdiction." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697 (7th Cir. 2015) (citing *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "The affidavit of the party asserting personal jurisdiction is presumed true only until it is disputed. Once disputed, the party asserting personal jurisdiction . . . must prove what it has alleged." *Durukan Am., LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1163-64 (7th Cir. 2015); *see also Purdue*, 338 F.3d at 783 (once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction).

If material facts about personal jurisdiction are in dispute, "particularly when the court is required to assess credibility in order to resolve factual disputes," a court "must hold an evidentiary hearing to resolve them." *Philos*, 802 F.3d at 912 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). No party has sought an evidentiary hearing, which is unnecessary in this case because the parties do not dispute the facts relevant to the question of personal jurisdiction. We thus turn to a summary of the material facts.

## II.

Eclipse is an aircraft manufacturer that provides maintenance and ancillary services for its products (Am. Compl. ¶ 9). It is a Delaware corporation with its principal place of business in New Mexico (*Id.* ¶ 3). Eclipse has maintenance facilities in Albuquerque, New Mexico and Wheeling, Illinois (*Id.*; *see also* Pl.'s Resp., Ex. B: Decl. of Andy Neild ¶ 2).

In May 2011, Star 7 owned an Eclipse 500 Jet ("the Aircraft") (Am. Compl. ¶ 14). Star 7 was then owned by Robert Davis (Pl.'s Resp., Ex. A: Decl. of Patrick Broderick ¶ 2). Star 7 is a limited liability company organized under the laws of Louisiana, with its principal place of business in Louisiana (Am. Compl. ¶ 4).

On or about May 26, 2011, Star 7 and Eclipse entered into an agreement ("the Contract") for Eclipse to perform an avionics upgrade ("the Upgrade") on the Aircraft at a discounted price (Am. Compl. ¶¶ 15, 21-23). Under the Contract, Star 7 agreed (subject to exceptions not relevant here) that it would not market or resell the Aircraft for 24 months following the completion of the Upgrade (*Id.* ¶¶ 17, 20).

Mr. Davis signed the Contract on behalf of Star 7 in Louisiana (Pl.'s Resp., Ex. B1: Contract, at 4). Neither the Contract nor the parties' submissions on the motion disclose the course of negotiations leading to the Contract or where those negotiations occurred. The Contract did not specify whether the Upgrade work would be performed at Eclipse's Albuquerque facility or at its Wheeling facility, and under the Contract, Eclipse reserved the right to subcontract any portion of the work to be performed to another maintenance facility or individual (*Id.*, ¶ 1(b)).

After the one-page work order for the Upgrade, identifying the specific Aircraft and the scope of work to be performed on it, the Contract appears to be standard, form terms and conditions used by Eclipse as an attachment to the work order (Contract, at 1-4). The Contract includes a choice of law and choice of venue clause stating: "This Order shall be construed, interpreted and enforced in accordance with the laws of the State of Illinois. . . . Customer [Star 7] agrees that its sole choice of venue to bring any action against [Eclipse] shall reside in the county of Cook, state of Illinois" (*Id.*, ¶ 20c). The Contract did not provide that the County of Cook would be the sole venue -- or a proper venue -- in which Eclipse could bring suit against Star 7.[2]

---

[2]The Contract also provided for the mediation and arbitration of any dispute that "arises from or relates to this contract or the breach thereof," and that any arbitration would take place in "the State of Illinois and county where the [Eclipse] corporate facility is located, or any other place selected by mutual agreement of the parties" (Pl.'s Resp., Ex. B, at 3). For reasons that they have not revealed, the parties have agreed to waive the arbitration provision (Pl.'s Resp. at 6).

3

On August 24, 2012, Shawn (Patrick) Broderick, a pilot for Star 7, confirmed with the general manager of the Eclipse Wheeling facility, Andy Neild, that the Upgrade would be performed in the Illinois facility (Am. Compl., ¶ 7). Thereafter, on January 25, 2013, Mr. Davis transferred Star 7 to Culbertson Contractors (Pl.'s Resp., Ex. J: Star 7 Purchase Agreement). Defendant Jay Culbertson, a resident of Louisiana and/or Mississippi (Am. Compl., ¶ 6), is the managing member of Culbertson Contractors, which is a limited liability company organized under the laws of Mississippi, with its principal place of business in Mississippi (*Id.*, ¶ 5). Culbertson Contractors became the only officer and sole member of record for Star 7, and Mr. Culbertson became the managing member of Star 7 (*Id.*, ¶ 4).

On one or more occasions between the end of 2012 and the beginning of 2013, Mr. Culbertson and Mr. Broderick participated in telephone calls with Ken Ross, then President of Global Sales and Services for Eclipse (Pl.'s Resp., Ex. C: Decl. of Ken Ross, ¶ 1). Mr. Culbertson sought to obtain the Aircraft with the Upgrade, and Mr. Culbertson was told that if he wished to get the same discounted pricing for the Upgrade that was offered to Star 7, he would have to purchase Star 7, not just the Aircraft (*Id.*, ¶ 3). The parties do not reveal where they were located when these telephone calls occurred.

On January 23, 2013, two days before the transfer of Star 7, Mr. Culbertson, his pilot, Josh Reed, and Mr. Neild met in the Wheeling maintenance hangar to discuss damage to and repairs needed for a different Eclipse aircraft that Mr. Culbertson already owned (Neild Decl., ¶ 8). Mr. Culbertson also met with Mr. Ross in his executive office at the Wheeling facility to discuss Mr. Culbertson taking over Star 7 in order to obtain the Upgrade with the discounted pricing that Star 7 and Eclipse had agreed to in the Contract (*Id.*, ¶ 9; Ross Decl., ¶¶ 4-5).

On or about February 21, 2013, about one month after the transfer of Star 7, Mr. Reed flew the Aircraft to the Wheeling, Illinois facility so that Eclipse could perform the Upgrade (Neild Decl. ¶ 11; Pl.'s Resp., Ex. D: Dep. of Josh Reed at 47). Between February 21 and April 20, 2013, the date Eclipse completed the Upgrade on the Aircraft, Mr. Reed exchanged several emails with Beau Klingbeil, the lead aircraft technician at the Eclipse Wheeling facility, regarding additional maintenance and repairs (referred to as "MRFs") to the Aircraft (Am. Compl., ¶ 24; Pl.'s Resp., Exs. L-P). Culbertson Contractors completed payment for the Upgrade on June 6, 2013, by wiring the remaining money it owed Eclipse to a bank in San Francisco, California (Neild Decl., ¶ 15; Ex. B6).

On or about December 5, 2014, Mr. Culbertson, on behalf of Star 7, sold the Aircraft, which was located at the time in Louisiana, to a Louisiana company, Voaralto, LLC (Am. Compl., ¶¶ 34-36; Pl.'s Resp., Ex. R). Mr. Culbertson signed the bill of sale as managing member of Star 7 (Am. Compl., ¶ 37; Pl.'s Ex. R). That sale occurred fewer than 24 months after the Upgrade had been performed. Eclipse filed this federal lawsuit three months later, in March 2015. In Count I, Eclipse alleges that Star 7 breached the Contract's covenant not to transfer when it sold the Aircraft less than 24 months after the Upgrade was completed (Am. Compl., at 9). In Count II, plaintiff alleges that Star 7's corporate veil should be pierced in order to extend liability for that alleged breach to Mr. Culbertson and/or Culbertson Contractors (*Id.* at 10). In Count III, Eclipse alleges a claim of tortious interference with prospective economic advantage against Mr. Culbertson and/or Culbertson Contractors (*Id.* at 13).

### III.

A federal district court sitting in diversity applies the personal jurisdiction rules of the state in which it sits. *See Hyatt*, 302 F.3d at 713. Illinois's long-arm statute permits its courts to

exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment. *Kipp*, 783 F.3d at 697. *See* 735 ILCS 5/2–209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."). Generally, there is "no operative difference" between Illinois and federal constitutional limits on personal jurisdiction. *Philos*, 802 F.3d at 912-13. Where, as here, the parties have not argued that the state's constitutional standards differ from federal law, we apply the federal due process limitations on personal jurisdiction. *Id.*

Under the Fourteenth Amendment's Due Process Clause, a court may exercise personal jurisdiction over an out-of-state defendant when that defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The defendant must have deliberately established these contacts, or, in other words, he must have purposefully availed himself of the forum state, 'such that he should reasonably anticipate being haled into court there.'" *Philos*, 802 F.3d at 913 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). "It is the defendant—not the plaintiff or third parties—that must create the contacts in the forum state, and those contacts must be 'with the forum State itself, not . . . with persons who reside there.'" *Philos*, 802 F.3d at 913 (quoting *Walden v. Fiore*, — U.S. —, 134 S.Ct. 1115, 1122 (2014)). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 134 S.Ct at 1122.

There are two categories of personal jurisdiction: general and specific. "General jurisdiction is 'all-purpose'; it exists only 'when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State.'" *Kipp*, 783 F.3d at 697-98 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, —

6

U.S. —, 131 S.Ct. 2846, 2851 (2011)). By contrast, "[s]pecific jurisdiction is case-specific." *Kipp*, 783 F.3d at 698. Eclipse contends that this Court has specific (not general) jurisdiction over defendants (Pl.'s Resp. at 6). In order to warrant the exercise of specific personal jurisdiction, "the defendant's contacts with the forum state must 'directly relate to the challenged conduct or transaction.'" *N. Grain Mktg., LLC, v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)). Moreover, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden*, 134 S. Ct. at 1121).

This need to closely link a defendant's activity in the forum state to the actionable conduct is central to the distinction between general and specific personal jurisdiction. When a defendant's activities in a jurisdiction are so pervasive as to create general personal jurisdiction, there is no reluctance for a court to require a defendant to answer a suit in that state even for actionable conduct that may have occurred elsewhere (assuming proper venue). *Kipp*, 783 F.3d at 698. But where a defendant does not have a general presence in the jurisdiction, due process requires more. "Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state." *Advanced Tactical*, 751 F.3d at 801 (emphasis in original); *see also N. Grain Mktg.*, 743 F.3d at 492 (the alleged injury must "arise[] out of the defendant's forum related activities").

Eclipse claims defendants engaged in the following specific jurisdictional contacts: "arranged for work to be performed in Illinois; delivered its aircraft into Illinois; negotiated the scope of services to be performed; paid for the work; and, came into Illinois to pick up the airplane" (Pl.'s Resp. at 7). Plaintiff also contends that the Illinois choice of law clause in the

7

Contract, and the fact that the Contract contained an Illinois forum selection clause for lawsuits brought by Star 7, creates the necessary contacts for specific jurisdiction in Illinois (*Id.* at 6, 15).

Defendants do not dispute these contacts. Rather, they argue that these contacts are not sufficient for a court to establish personal jurisdiction over them in Illinois. We agree.[3]

### A.

As plaintiff recognizes, the foregoing contacts do not show the kind of pervasive presence necessary to establish general jurisdiction (Pl.'s Resp. at 6). As a result, we must look for more than merely the existence of some activity by defendants in Illinois; we must focus on whether defendants' contacts with Illinois "directly relate to the challenged conduct or transaction." *N. Grain Mktg.*, 743 F.3d at 492. The "challenged conduct" in this case is the sale by Star 7 of the Aircraft fewer than 24 months after the completion of the Upgrade. That conduct took place not in Illinois, but in Louisiana (where the Aircraft was located), some 19 months after the Upgrade was performed. None of the conduct that plaintiff says occurred in Illinois is the challenged conduct, or "directly relates" to that conduct.

*First*, Mr. Culbertson did not come to Illinois in January 2013 for the sole purpose of discussing the Upgrade to the Aircraft. Rather, Mr. Culbertson met with Mr. Neild and Mr. Reed in the Wheeling maintenance hangar to discuss the scope of damage and repairs needed for a different Eclipse jet Mr. Culbertson owned (Neild Decl., ¶ 8). Afterward, Mr. Culbertson met with Mr. Ross in Illinois to discuss the Upgrade to the Aircraft (*Id.*, ¶ 9; *see also* Ross Decl., ¶¶ 4-5). These discussions did not constitute negotiations for Eclipse to Upgrade the Aircraft; the

---

[3]Plaintiff contends that this Court should consider not only Star 7's own activities directed toward Illinois, but also the activities of Mr. Reed, as Star 7's agent (Pl.'s Resp. at 7). While defendants do not admit that Mr. Reed was an agent of Star 7, they argue, for purposes of their motion, that even if Mr. Reed was an agent of Star 7, his contacts with Illinois were too limited to establish specific jurisdiction (doc. # 42: Defs.' Reply at 5 n.2). We agree that Mr. Reed's actions fail to advance plaintiff's effort to establish personal jurisdiction over Star 7.

8

Contract between Star 7 and Eclipse was already in place for the Upgrade. To the extent, as plaintiff argues, the discussions resulted in the Culbertson defendants purchasing Star 7 from Mr. Davis and not just the Aircraft, that acquisition took place wholly outside of Illinois. These discussions were not alleged to be the offending conduct, and we are unpersuaded that they directly relate to the offending conduct.

*Second*, the fact that the Upgrade took place in Wheeling, and defendants came to Illinois to deliver and pick up the Aircraft, is not conduct that directly relates to the action that plaintiff says breached the Contract and tortiously interfered with it -- the sale of the Aircraft in Louisiana 19 months later. Mr. Culbertson's and the Aircraft's "physical entry into the State . . . is certainly a relevant contact." *Walden*, 134 S. Ct. at 1122. However, defendants' actions did not constitute sufficient contacts with Illinois "simply because" they directed conduct at a plaintiff with Illinois connections. *Id.* at 1125. The performance of the Upgrade in Wheeling rather than Albuquerque has nothing to do with the challenged conduct; that is, plaintiff would make the same contract and tort claims irrespective of where the Upgrade was performed.

Unlike in *Madison Consulting Grp. v. State of South Carolina*, 752 F.2d 1193 (7th Cir. 1985), and *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757 (7th Cir. 2008) -- cases relied upon by Eclipse -- the place of plaintiff's performance of the contract is not directly related to the plaintiff's claims in the lawsuit. In *Madison Consulting*, many of the documents relevant to the breach of contract action were located in Wisconsin, where the contracted-for consulting work was performed. *Id.* at 1204-05. By contrast, in the case at hand, the details of the Upgrade and the maintenance work are not important to Eclipse's claims as there is no issue as to the scope or quality of the Upgrade, and plaintiff does not contend that any documents relevant to the lawsuit are located in Illinois. Rather, the issue in Eclipse's lawsuit is defendants'

9

actions in selling the Aircraft with the Upgrade (while the Aircraft was located outside of Illinois) to a buyer located outside of Illinois in alleged violation of a provision in a Contract that was entered into outside Illinois, by non-Illinois parties.

Likewise, in *Citadel*, 536 F.3d at 764, at issue was a contract for ongoing consulting, or administrative, services. The Seventh Circuit held that the defendant should have reasonably anticipated being haled into court in Illinois because the defendant authorized the Illinois-based plaintiff to begin project development, and the plaintiff proceeded to perform a series of administrative services almost entirely in Illinois. *Id.* By contrast, the Contract at issue in this case was for a one-time performance of an Upgrade to the Aircraft, and the Contract was silent as to the location of the Upgrade -- with no foreseeable (or, indeed, actual) contacts with Illinois beyond that.

What is directly related to the challenged conduct (allegedly jumping the gun on the sale of the Aircraft) is the Contract itself, which plaintiff says forbid that conduct. However, plaintiff has not offered evidence to show that the Contract was formed in Illinois. In determining whether specific jurisdiction exists in a breach of contract case, a court "must take into account prior negotiations, contemplated future consequences, the terms of the contract and the parties' course of actual dealing with each other" to determine whether the defendant purposefully has established minimum contacts within the forum. *Purdue*, 338 F.3d at 781. "Illinois courts use a multi-factor test for determining whether personal jurisdiction exists in these types of situations. They consider '(1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place.'" *Philos*, 802 F.3d at 913 (quoting *Estate of Isringhausen ex rel. Isringhausen v. Prime Contractors & Assocs., Inc.*, 883 N.E.2d 594, 600-01 (Ill. App. 2008)).

Eclipse, however, has not alleged or offered evidence to show that the Contract was initiated, negotiated, formed or executed in Illinois or that any payments made pursuant to the Contract were sent to Illinois (Defs.' Mem. at 9). Indeed, the evidence shows that the payment for the Upgrade was sent to a bank in California (Neild Decl., ¶ 15; Ex. B6).[4] Nor does plaintiff allege that Culbertson Contractors and Mr. Davis initiated, negotiated, formed or executed the agreement to purchase Star 7 in Illinois. And, as to the place of performance, the Contract did not require the Upgrade to be performed in Illinois.[5] While Mr. Culbertson met with Mr. Ross in Illinois in January 2013 before deciding to purchase Star 7, these were not contract negotiations with Eclipse. The agreement to purchase Star 7 was signed between Mr. Davis and Mr. Culbertson, and the Contract for the Upgrade had been entered into by Mr. Davis and Eclipse more than one and a half years earlier.

---

[4] Although Eclipse does not allege in its Amended Complaint or in its Response brief that Star 7 took any action in connection to Illinois with regard to the formation of the Contract in May 2011, we note that in his affidavit, Mr. Neild said that the Work Order Authorization was executed and provided to Eclipse's Wheeling facility (Neild Decl., ¶ 5). However, Mr. Neild does not state where Star 7 signed the Contract, and the Contract does not specify in which state the Contract was executed, formed or signed. The simple fact that the Contract was provided to the Illinois facility does not provide support for plaintiff's argument that Star 7 had the necessary minimum contacts with Illinois. *See, e.g., Reserve Capital, LLC v. CLB Dynasty Trust 2002*, No. 05 C 6556, 2006 WL 1037321, at *7 (N.D. Ill. Apr. 17, 2006) (where the defendants signed the contracts in a state other than Illinois, then forwarded them to the plaintiff for its signature in Illinois, that factor alone is not enough to tilt the balance in favor of asserting personal jurisdiction). In this case, unlike *Reserve Capital*, there is no evidence that the Contract was even signed in Illinois, and thus no evidence that any contractual event of import was connected to Illinois.

[5] Plaintiff also argues that this Court should attribute Star 7's contacts with Illinois to Mr. Culbertson and Culbertson Contractors because of its claims in Count II, that Star 7's veil should be pierced because its corporate form was illegal under Illinois and federal aviation law (Pl.'s Resp. at 9-13). Although due process generally requires that each defendant's contacts with the forum state be assessed individually, *see Purdue*, 338 F.3d at 784-85, courts may "impute a shell corporation's contacts with a State to a shareholder who exercises 'an abnormal level of involvement or control' over the corporation's affairs." *Riverdale Plating & Heat Treating, LLC v. Andre Corp.*, No. 15 C 3255, 2015 WL 5921896, at *4 (N.D. Ill. Oct. 9, 2015) (quoting *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 733–34 (7th Cir. 2013) (holding that fact that individual defendant was corporation's president and sole shareholder was not enough to subject individual to personal jurisdiction in Illinois, as shareholders do not inherit a corporation's contacts with a State). Here, however, we need not reach the merits of plaintiff's veil piercing argument because Star 7 itself does not have sufficient contacts with Illinois to be subject to specific jurisdiction in this state.

**B.**

Moreover, defendants' contacts with Illinois cannot be considered "substantial." Defendants did not, through the contacts listed above, "deliberately engage[] in significant activities within" Illinois. *Purdue*, 338 F.3d at 781. The Seventh Circuit's opinion in *Philos* granting the defendants' motion to dismiss for lack of personal jurisdiction is instructive.

In that case, the plaintiff, an Illinois corporation, sued the defendants, a Korean company and Korean citizens, for breach of contract for unlawfully retaining equipment that the plaintiff had contracted to ship to the Korean company. *Philos*, 802 F.3d at 908. The Seventh Circuit described the Korean defendants' contacts with Illinois, including a tour of the plaintiff's Illinois facilities before the contract was signed, as "mostly incidental interactions." *Id.* at 914-15. The contract at issue was "neither highly structured nor long-lasting; instead, it was in essence a contract for the provision of goods to a Korean company." *Id.* at 915. The court held that the fact that the plaintiff produced those goods in Illinois -- even if at the behest of the defendant -- was "largely incidental to the jurisdictional analysis." *Id.* The court reasoned that the *Philos* defendants "neither solicited the Illinois company to enter into an agreement nor travelled to the state for the purpose of conducting business with that company." *Id. Cf. Eagle Air Transp., Inc. v. Nat'l Aerotech Aviation Delaware, Inc.*, 75 F. Supp. 3d 883, 889-90 (N.D. Ill. 2014) (specific jurisdiction in Illinois was present where the Delaware defendant initiated contact with the Illinois plaintiff to sell the plaintiff an airplane, and the Delaware defendant knew that if the aircraft needed warranty work in the future, such work would -- and did -- take place in Illinois).

Like the contract in *Philos*, in this case, the Contract between Eclipse and Star 7 was a straightforward contract to purchase an Upgrade for the Aircraft at a discounted price. That the plaintiff performed the Upgrade in Illinois is largely incidental to this Court's jurisdictional

analysis and defendants here had very few other contacts with Illinois. One such contact was when Mr. Culbertson traveled to Eclipse's Illinois maintenance facility and discussed with Mr. Ross the possibility that Culbertson Contractors would purchase Star 7. However, as in *Philos*, defendants did not solicit Eclipse to enter into an agreement or conduct business with Eclipse; rather, the discussions were preliminary to Mr. Culbertson's decision to have Culbertson Contractors purchase Star 7, and tangential to the Contract regarding the Upgrade.

**C.**

Eclipse also argues that the choice of law, choice of venue, and arbitration provisions in the Contract made it foreseeable to defendants that they could be haled into court in Illinois, and that personal jurisdiction in this Court is thus proper (Pl.'s Resp. at 6). We first consider plaintiff's reliance on the choice of law and venue provisions.

Paragraph 15 of the Contract, entitled "Applicable Law and Attorneys' Fees" states, in relevant part, that: "This Order shall be construed, interpreted and enforced in accordance with the laws of the State of Illinois exclusive of any choice of law rule of that State, or any other Jurisdiction which could cause any other matter to be referred to the law or jurisdiction other than that State. Customer agrees that its sole choice of venue to bring any action against EAI [Eclipse] shall reside in the county of Cook, state of Illinois. . ." (Contract, ¶ 15).

"[C]hoice of law provisions may be some indication that a defendant purposefully has availed itself of the protection of the laws of a particular jurisdiction . . ." *Purdue*, 338 F.3d at 786-87 (citing *Burger King*, 471 U.S. at 482). However, in this case, there are several reasons why we do not find the choice of law or choice of venue clause to be an indication that defendants established minimum contacts with the State of Illinois.

13

*First*, while the choice of venue clause states that Star 7 may only bring an action under the Contract against Eclipse in Cook County, Illinois, the Contract is silent on where Eclipse may bring an action against Star 7 (Contract, ¶ 15). In Illinois, "there is a presumption against provisions that easily could have been included in a contract but were not." *Thompson v. Gordon*, 948 N.E.2d 39, 51 (Ill. 2011). The parties easily could have mandated a choice of venue for Eclipse as well as Star 7, but they did not, and "a court cannot alter, change or modify existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted[,] take away something which the parties have included . . . [or] add another term about which the agreement is silent." *Gallagher v. Lenart*, 854 N.E.2d 800, 807 (Ill. App. 2006) *aff'd*, 874 N.E.2d 43 (Ill. 2007). Thus, we find that the Contract's silence on a choice of venue for an action brought by Eclipse, in contrast to the clause mandating that Star 7 bring suit in Illinois, undermines plaintiff's argument that defendants should have known that they could be haled into court in Illinois.[6]

*Second*, the Contract contemplates that lawsuits could be brought in jurisdictions outside of Illinois. It states that Illinois law applies regardless of the choice of law rule in the Illinois court "or any other Jurisdiction . . ." (Contract, ¶ 15). "A contract must be construed as a whole, viewing each provision in light of the other provisions," and "contracts should not be construed in a manner that would nullify or render provisions meaningless." *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015) (citing *Thompson*, 948 N.E.2d at 47). If, as plaintiff contends, the choice of venue as Illinois was obvious from the terms of the Contract, the clause about "any other Jurisdiction" would not be necessary. Yet, no one would assert that this

---

[6]By contrast, in *Keller v. Henderson*, 834 N.E.2d 930, 932-33, 937 (Ill. App. 2005), a case heavily cited by plaintiff, the contract provided that any disputes arising out of the contract "shall be" litigated in Illinois.

14

clause made it reasonable for defendants to expect that they could be sued by Eclipse in every state in the Union. Therefore, we do not find that the terms of the Contract put defendants on notice that they could be subject to jurisdiction in Illinois.

The arbitration clause provides no better support for plaintiff's attempt to establish specific personal jurisdiction. We recognize that the arbitration clause mandates that any arbitration take place in Illinois unless the parties agree otherwise. However, an agreement to arbitrate in a particular jurisdiction is different than an agreement to be amenable to suit in a particular jurisdiction or court. A party may consent to a speedy and streamlined arbitration in a particular jurisdiction when it would not agree to travel to that jurisdiction to engage in full-blown litigation in federal or state court.

Indeed, we know of no court that has held that a defendant who agrees to arbitrate in a particular forum also consents to litigate in that forum. Rather, courts in this district have concluded that an agreement to arbitrate in a particular forum is *not* sufficient to establish personal jurisdiction over a lawsuit filed in that forum. *See, e.g., Guaranteed Rate, Inc. v. Lapham*, No. 12 C 6776, 2012 WL 6138947, at *2 (N.D. Ill. Dec. 6, 2012) (Kennelly, J.); *United Fin. Mortg. Corp. v. Bayshores Funding Corp.*, 245 F.Supp.2d 884, 892-93 (N.D. Ill. 2002) (St. Eve, J.). Thus, we will not infer that by agreeing to arbitrate in Illinois, Star 7 would foresee that it could be sued in an Illinois court, particularly where: (1) the Contract specifies where Star 7 may sue Eclipse, but not where Eclipse may sue Star 7; (2) the arbitration agreement is set forth in a form agreement prepared by Eclipse, without any evidence that this term was a subject of negotiation; and (3) the Contract could have included a forum selection clause for litigation brought by Eclipse, but did not do so.

## IV.

The foregoing analysis focuses on plaintiff's contract claim. Plaintiff also alleges that Mr. Culbertson and Culbertson Contractors committed a tort by intentionally interfering with the Contract when they sold the Aircraft with the Upgrade prior to the expiration of 24 months, in express violation of the Contract (Am. Compl., ¶¶ 78-82, 85). Plaintiff claims that defendants unjustly profited from the sale of the Aircraft while causing harm to plaintiff's reasonable expectation to enter into future business relationships (*Id.*).

Our analysis explaining why there is no specific personal jurisdiction for the contract claim applies to the tort claim. In *Philos*, the Seventh Circuit explained that its conclusion that there was no personal jurisdiction "would remain the same if [they] read Philos Tech's complaint to raise a claim of conversion, rather than breach of contract," because the same contacts of the defendant with the forum state were at issue in both the contract and the tort claims: "as we have just discussed, the defendants did not have sufficient contacts with Illinois such that the exercise of personal jurisdiction over them would conform to constitutional standards. Philos Tech cannot avoid that conclusion by a simple shift in the state-law theory that supports its claim." *Id.*[7]

Moreover, plaintiff's effort to establish personal jurisdiction for the tort claim fails for an additional reason. "Illinois courts have stated that they may exercise personal jurisdiction over defendants in tort suits 'if the defendant performs an act or omission that causes an injury in Illinois and the plaintiff alleges the act was tortious in nature.'" *Philos*, 802 F.3d at 915 (quoting *Kalata v. Healy*, 728 N.E.2d 648, 653 (Ill. App. 2000); 735 ILCS 5/2–209(a)(2)). In this case, Eclipse alleges only an economic injury. As Eclipse has no contacts with Illinois besides its

---

[7]Again, the case cited by plaintiff, *Keller*, 834 N.E.2d at 933, 937-38, is distinguishable. In *Keller*, the Illinois Appellate Court held that it had personal jurisdiction over the defendant because the defendant sought and hired an Illinois resident to fly an airplane that the plaintiff alleged was unsafe, resulting in the Illinois resident's death.

16

maintenance hangar, we do not find persuasive Eclipse's contention that the injury allegedly caused by defendants occurred or was felt in Illinois -- as opposed to where the company and its finances are based. The Seventh Circuit has stated that for a tort claim to be the basis for personal jurisdiction in Illinois, it requires a forum-state injury and "something more" directed at that state, such as if the defendant acted with the purpose of interfering with sales originating in Illinois. *Tamburo*, 601 F.3d at 702. That "something more" is not present in this case.

Based on the totality of these considerations, we conclude that Eclipse has failed to make a *prima facie* showing of specific jurisdiction over any of the defendants in this case. "The record simply will not support the conclusion that [defendants] purposefully availed [themselves] of the benefits of conducting business in [Illinois] with respect to this litigation." *Purdue*, 338 F.3d at 786-87.[8]

---

[8] Both parties also separately address the question of whether exercising personal jurisdiction would "offend traditional notions of fair play and substantial justice" (Pl.'s Resp. at 14-15; Defs.' Mem. at 14-15). However, this question is not separate from the minimum contacts analysis. As the Supreme Court explained in *International Shoe*, a court may exercise personal jurisdiction over an out-of-state defendant when that defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. Where, as in this case, the defendants do not have minimum contacts (as the case law has defined and developed this phrase over the last 70 years) with Illinois, then an exercise of personal jurisdiction by this court *would* offend traditional notions of fair play and substantial justice. As such, we need not separately address "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Tamburo*, 601 F.3d at 709 (quoting *Burger King*, 471 U.S. at 477). Because defendants do not have minimum contacts with Illinois, these factors would weigh in favor of not subjecting defendants to the jurisdiction of this Court.

## CONCLUSION

For the foregoing reasons, defendants' Rule 12(b)(2) motion is granted (doc. # 19). The claims are dismissed without prejudice. *See Sikhs for Justice v. Badal*, 736 F.3d 743, 751 (7th Cir. 2013) (a dismissal for want of personal jurisdiction is without prejudice, "[f]or without personal jurisdiction, a court has no authority to adjudicate a case on the merits").

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: March 3, 2016**